## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DAWN ELAINE SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. CIV-21-775-SM** |
| **KILOLO KIJAKAZI,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Dawn Elaine Smith (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A), 1382c(a)(3)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). *See* Docs. 15, 16.

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings because the Administrative Law Judge (ALJ) improperly formulated the RFC and improperly considered the demands of her past relevant work at step four of the sequential analysis. Doc. 17, at 13-23. After a careful review of the record (AR), the parties' briefs, and

the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[1]

# I. Administrative determination.

## A. Disability standard.

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

## B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

## C. Relevant findings.

### 1. Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 16-26; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since March 1, 2020, the amended alleged onset date;

(2) had the severe medically determinable impairment of lumbar spine impairment;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the RFC to perform light work with the following limitations: (a) lift or carry, push or pull twenty pounds occasionally and ten pounds frequently; (b) sit for six hours out of an eight-hour day; (c) stand or walk a combined total of four hours out of an eight-hour day; (d) should avoid climbing ladders, ropes, or scaffolds; and (e) can occasionally stoop;

(5) was able to perform her past relevant work as an assistant manager, bartender, administrative assistant, and cashier; and so;

3

(6)     had not been under a disability from January 31, 2019,[2]
        through the date of the decision.

*See* AR 19-26.

### 2.     Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's

request for review, *see id.* at 1-7, making the ALJ's decision "the

Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d

1324, 1327 (10th Cir. 2011).

## II.    Judicial review of the Commissioner's final decision.

### A.     Review standard.

The Court reviews the Commissioner's final decision to determine

"whether substantial evidence supports the factual findings and whether the

ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326,

1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less

than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139

S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.")

(internal quotation marks and citation omitted). A decision is not based on

substantial evidence "if it is overwhelmed by other evidence in the record."

---

[2]     As this date differs from the amended alleged onset date, it appears to
be a typographical error.

*Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

## III.   Analysis.

### A.   Substantial evidence supports the ALJ's formulation of the RFC.

Plaintiff asserts the ALJ erred by failing "to include any limitations regarding [her] capacities for cervical movements or continuous sitting and standing" or "any explanation of why such limitations were omitted." Doc. 17, at 14-15. Plaintiff asserts the evidence—both evidence explicitly considered by the ALJ and evidence not addressed in the decision—support greater limitations than assessed in the RFC. Plaintiff also argues the ALJ failed to properly consider her subjective complaints. *Id.* at 20-23. The Court finds that substantial evidence supports the ALJ's RFC determination. A conclusion otherwise would amount to reweighing the evidence.

#### 1.   The ALJ properly considered the medical evidence related to Plaintiff's physical impairments.

The ALJ summarized the medical record, including entries related to Plaintiff's cervical spine. He considered Plaintiff's normal CT scan and a finding of no midline or bony tenderness to palpation on examination during a February 1, 2019 emergency room visit. AR 22-23 (citing *id.* at 391, 396). The

ALJ also addressed records from Dr. Qualls Stevens, D.O., a neurosurgeon, who noted Plaintiff complained of pain across her neck, suspected Plaintiff had a compressive cervical lesion, and recommended a cervical MRI. *Id.* at 23 (citing *id.* at 541). The ALJ summarized the results of the MRI, which revealed spinal canal stenosis and bilateral neural foraminal stenosis of varying severity at C3-4, C5-6, and C6-7. *Id.* (citing *id.* at 585). Dr. Stevens recommended cervical injections but would require cervical decompression and fusion from C3/4 through C6/7 if she remained symptomatic. *Id.* (citing *id.* at 544). The ALJ then referenced Dr. Stevens's note conveying he would refer her to an interventional pain physician for epidural injections because Plaintiff was "adamantly against" surgical intervention. *Id.* (citing *id.* at 547). The ALJ noted Plaintiff declined any surgical intervention and never received the recommended epidural steroid injections. *Id.* at 25.

The ALJ also addressed records from Plaintiff's primary care physician, Dr. Julian Cecil, M.D., who prescribed Plaintiff pain medication for low back pain after not having seen Plaintiff in over a year. *Id.* (citing *id.* at 618). The ALJ noted Dr. Cecil's records between July 14, 2020, and November 6, 2020,[3] reflecting pain medication worked well for Plaintiff to reduce her pain and

---

[3]      There are no records in the file from Dr. Cecil after November 6, 2020.

increase her ability to perform activities of daily living. *Id.* at 24 (citing *id.* at 597, 603, 605, 610, 614).

Plaintiff acknowledges the ALJ addressed medical records related to her cervical spine but contends the ALJ did not address all of the relevant findings. The relevant regulations require the ALJ to "consider all evidence in [the] case record when [he] makes a determination or decision whether [claimant is] disabled." 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). While the ALJ "is not required to discuss every piece of evidence," *Wall*, 561 F.3d at 1067, he must "discuss the significantly probative evidence he rejects." *Carpenter*, 537 F.3d at 1266 (internal quotation marks and citation omitted).

Plaintiff contends the ALJ did not address portions of her MRI showing Plaintiff had mild spinal canal stenosis and mild-or-moderate neural foraminal stenosis at C4-5 and C7-T1. Doc. 17, at 15; AR 585. But the MRI findings at these discs were less severe than those referenced by the ALJ. *See id.* at 584-85 (showing C3-4, C5-6, and C6-7 had mild-to-moderate or moderate spinal canal stenosis and C5-6 and C6-7 had moderate-to-severe bilateral neural foraminal stenosis). And the ALJ noted Dr. Stevens recommended treatment from C3-4 through C6-7. *Id.* at 23. Under these circumstances, the specific MRI findings from C4-5 and C7-T1 were not particularly probative.

Plaintiff also contends the ALJ did not address portions of records from Dr. Stevens noting Plaintiff had restricted cervical mobility. Doc. 17, at 15-16 (citing AR 545, 548). Dr. Stevens's finding is informed by his narrative discussion of Plaintiff's condition, which states Plaintiff had "trouble with her neck movements depending on her posture" and had "difficulty with neck extension." AR 544, 547. While the ALJ focused on Plaintiff's report of neck pain rather than the range-of-motion notation in Dr. Stevens's report, he specifically referenced Plaintiff's complaint of being unable to look up because it made her dizzy. *Id.* at 22 (citing AR 330). Thus, the Court finds the ALJ adequately addressed the issue.

Plaintiff contends the ALJ should have discussed Dr. Cecil's findings with regard to Plaintiff's slow ambulation due to pain and restricted lumbar flexion and extension mobility "both prior and subsequent to her July 2019 back surgery." Doc. 17, at 16. Additionally, Plaintiff contends the ALJ should have addressed records reflecting she made only limited progress in physical therapy before her surgery. *Id.* (citing AR 420, 422, 425, 428, 430, 433, 436, 439, 485, 493, 542, 539, 545, 587, 613, 617). The Commissioner argues this evidence predates the relevant period. Doc. 21, at 7.

Although these records predate Plaintiff's amended onset date, they may be relevant to the ALJ's determination. *See Hamlin v. Barnhart*, 365 F.3d

8

1208, 1215 (10th Cir. 2004) ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ."). The ALJ considered the records, as he stated he considered the entire record. AR 19. It is the Court's "general practice" to "take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). And the ALJ did not have an obligation to discuss them because they do not amount to probative evidence he rejected.

The records cited by Plaintiff are from 2019—mostly from Dr. Cecil, but also from Dr. Stevens and her physical therapist—showing she had a limited range of motion in her lower back and slow ambulation due to pain. AR 420, 422, 425, 428, 430, 433, 436, 493, 542, 545. The ALJ recited these findings from a July 2020 appointment with Dr. Cecil, noting "[s]he ambulated slowly due to pain" and "[s]he had limited range of motion in the low back [due] to flexion and extension." *Id.* at 23. Although the ALJ did not cite Dr. Cecil's records from 2019, the ALJ acknowledged Plaintiff's continued limited range of motion and slow ambulation. And the record reflects the ALJ considered Dr. Cecil's prior records, as he recognized that Plaintiff had not seen Dr. Cecil since May 2019. *Id.* (citing *id.* at 418). And the ALJ summarized 2019 records from Plaintiff's

emergency room visit, her treatment notes from Dr. Stevens, and objective MRI findings. *Id.* at 22-23. The ALJ recognized Dr. Cecil's similar findings from the relevant period and extensively considered other 2019 medical records related to her relevant medical conditions. The Court thus concludes the ALJ did not need to discuss the prior findings.

The ALJ properly considered the medical evidence when formulating the RFC. Although Plaintiff argues the evidence supports additional limitations related to her cervical range of motion and a sit/stand option, the Court will not reweigh the evidence. *See Newbold*, 718 F.3d at 1262.

### 2. Substantial evidence supports the ALJ's consideration of Plaintiff's subjective complaints.

Plaintiff contends the ALJ's consideration of her subjective complaints is not supported by substantial evidence. Doc. 17, at 20-23. Plaintiff contests the ALJ's finding that her statements about the intensity, persistence, and limiting effects of her symptoms were not consistent with the evidence. *Id.*

In the decision, the ALJ found:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 22. The ALJ then explained Plaintiff's "treatment history . . . is not indicative of someone with her alleged level of pain and limitations from impairment." *Id.* The ALJ stated he considered all of Plaintiff's alleged symptoms as part of the RFC determination. *Id.* at 21. Then, the ALJ summarized the medical evidence and thoroughly analyzed Plaintiff's September 2019 Disability Report and her October 2019 Function Report. *Id.* at 22. The ALJ, however, did not specifically address Plaintiff's hearing testimony. The ALJ concluded:

> Based on the foregoing, the undersigned finds the above [RFC] assessment accommodates [Plaintiff's] physical impairments and is adequate to address the location, duration, intensity and frequency of [Plaintiff's] bona fide symptoms, as well as any reasonably anticipated aggravating and precipitating factors. While [Plaintiff] has ongoing back pain, it appears her pain medication is working well as she continually reported to Dr. Cecil. She declined any surgical intervention and never received the recommended epidural steroid injections. She was able to travel by flying and reported she could perform her activities of daily living . . . . [Plaintiff's] allegations and subjective complaints lack consistency with the medical evidence to the extent that they purport to describe a condition of disability for Social Security purposes.

*Id.* at 25.

An ALJ must determine whether Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms are consistent with the objective medical evidence, statements from medical sources, or any other

sources who might have information about her symptoms. SSR 16-3p, 2017 WL 5180304, at *6. Additional factors for the ALJ to consider are: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, Plaintiff has received; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions. *Id.* at *7-8; *see also* 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *See Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Provided the ALJ links his assessment of Plaintiff's consistency to specific evidence in the record, this Court affords substantial deference to the ALJ's determination. *See. e.g.*, *Keyes-Zachary*, 695 F.3d at 1167 ("But so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,' he need not make a 'formalistic factor-by-factor recitation of the evidence.'" (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000))). "[C]ommon sense, not technical perfection," is this Court's guide. *Id.*

12

Plaintiff asserts there is "nothing in her Function Report to suggest that she performed really anything more than minimal activities not inconsistent with disabling pain." Doc. 17, at 22 (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)). In *Thompson*, the court held a "sporadic" performance of household tasks does not establish a person can engage in substantial gainful activity. 987 F.2d at 1490. Here, the ALJ cited more than sporadic household activity—he noted Plaintiff cared for her dog, performed personal grooming, prepared simple meals daily, dusted, did the laundry, drove alone, and shopped weekly. AR 22. Thus, the ALJ did not err.

Plaintiff also argues her "need for ongoing narcotic medication was indeed reflective of significant pain." Doc. 17, at 23. But the ALJ did not ignore Plaintiff's prescriptions of narcotic pain medication—he summarized medical records indicating Plaintiff had been prescribed pain medication by Dr. Cecil throughout 2020. AR 23-24. Based on those records, the ALJ concluded the "pain medication was working well" because she consistently reported to Dr. Cecil her pain had decreased by 50%. *Id.* at 25. The Court will not reweigh the evidence to come to a different conclusion.

Plaintiff also contends the ALJ should have addressed an observation from an interviewer in September 2019 commenting Plaintiff had difficulty sitting, standing, and walking and who observed Plaintiff "seemed as if in pain

and moved around alot [sic]." *See id.* at 309. The ALJ should "consider any statements in the record noted by agency personnel who previously interviewed the individual, whether in person or by telephone." SSR 16-3p, 2017 WL 5180304, at *7 (Oct. 25, 2017). Here, the ALJ found Plaintiff "has ongoing back pain" and cited medical evidence indicating Plaintiff had difficulty ambulating. AR 23, 25. He also found persuasive Dr. Coffman's opinion that Plaintiff could only stand four hours in an eight-hour workday and imposed the limitation in the RFC. *Id.* at 21, 24. And the ALJ's RFC further limited Plaintiff to sitting only six hours in an eight-hour work day. *Id.* at 21. And the ALJ's limitation to light work amounts to a significant restriction on Plaintiff's physical abilities. *See Marquez v. Saul*, 2021 WL 2073510, at *10 (D.N.M. May 24, 2021) ("[T]he ALJ assigned Marquez an RFC for light work—which itself imposes significant restrictions on certain activities . . . ."); *Meyer v. Comm'r of Soc. Sec. Admin.*, No. CIV-16-1116-R, 2017 WL 2964729, at *2 (W.D. Okla. June 19, 2017) ("Likewise, Plaintiff ignores the *significant* restriction the ALJ imposed due to the effects of his degenerative disc disease: a limitation to *light* work."), *adopted*, 2017 WL 2958616 (W.D. Okla. July 11, 2017). Given these findings, "it is not reasonable to conclude that such lay comments would have persuaded the ALJ—or any other

adjudicator—that Plaintiff could not perform light work." *Wier v. Astrue*, No. CIV-07-1311-HE, 2008 WL 5046420, at *8 (W.D. Okla. Nov. 21, 2008).

Plaintiff also contends "the ALJ disregarded [her] later testimony that she spent more than half her day sitting in a recliner and needed breaks during household chores of sweeping and dishwashing." Doc. 17, at 22. She also asserts the ALJ should have acknowledged her testimony "regarding limitations in sitting over 30 minutes and performing cervical movements" and that she used a heating pad while sitting. *Id.* at 23.

The record reflects Plaintiff testified she had to "be real careful" driving because she has to turn her whole body to see when she turns her head.[4] AR 52. She testified if she sits more than thirty minutes, her arms go numb and her back aches. She also stated she would be limited in how long she can look down because of her neck—she would become uncomfortable after about thirty minutes. *Id.* at 54-55. She asserted she would need to get up and stretch or adjust her back brace after 30 minutes of sitting. *Id.* at 55-56. She also stated

---

[4]     The ALJ noted Plaintiff's Adult Function Report, in which Plaintiff reflected she drove. AR 22. While the ALJ did not specifically address that Plaintiff had to "be real careful" or that she had to shift her body to turn her head when driving, she could still drive at the time of her hearing. Thus, the Court finds the ALJ did not improperly consider Plaintiff's driving.

she never walks for more than fifteen minutes because she starts to hurt. *Id.* at 56.

While the ALJ did not specifically address Plaintiff's hearing testimony, the ALJ stated he considered all of Plaintiff's symptoms, and the Court should "take a lower tribunal at its word when it declares that it has considered a matter." *Hackett*, 395 F.3d at 1173; *see also Miller v. Barnhart*, 194 F. App'x 519, 521 (noting although "the ALJ's decision did not specifically discuss the [claimant's] mother's testimony," "[t]he ALJ's written decision states and demonstrates that he considered all of the evidence in the record"). Further, "[t]he ALJ . . . is not required to state in the decision every limitation on every daily activity reported by Plaintiff." *Franklin v. Colvin*, No. CIV-15-1371-R, 2016 WL 7638298, at *5 (W.D. Okla. Dec. 19, 2016), *adopted*, 2017 WL 53585 (W.D. Okla. Jan. 4, 2017).[5] Ultimately, the ALJ found Plaintiff's symptoms were inconsistent with the evidence because she reported to Dr. Cecil her pain medication worked, she refused or did not obtain recommended treatment for

---

[5] Even if it were error to not specifically discuss Plaintiff's testimony about her need to get up after sitting for 30 minutes, it would be harmless. The VE testified that Plaintiff could still perform her past relevant work as an administrative assistant if she had to alternate positions every thirty minutes while staying at the work station because the job is one where an individual "can sit or stand pretty much at will." AR 59. Thus, even if the ALJ had included such a sit/stand option in the RFC, Plaintiff could have performed her past relevant work, requiring a finding of not disabled.

her conditions, and she could perform some activities of daily living. AR 25. These reasons were proper, and the Court will not disturb the ALJ's symptom analysis.

## B.   The ALJ did not err at step four of the sequential analysis.

At step four of the sequential evaluation process, the ALJ must make specific findings in three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In phase one, "the ALJ must evaluate a claimant's physical and mental residual functional capacity" by first assessing "the nature and extent of [the claimant's] physical limitations" and "mental impairments. *Id.* at 1023-24. In phase two, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work." *Id.* at 1024. Finally, in phase three, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id.* at 1023. The ALJ should make these findings on the record. *Id.* at 1025. Plaintiff argues the ALJ erred in formulating the RFC at phase one and in considering the demands of her past relevant work at phase two. Doc. 17, at 13-23.

### 1.   The ALJ committed no phase-one error.

As explained *supra* § III.A, substantial evidence supports the ALJ's RFC formulation, so the ALJ did not err at phase one.

##### 2.   The ALJ did not err at phase two in considering the demands of Plaintiff's past relevant work.

Plaintiff contends the ALJ erred in finding she could return to her past relevant work at step four. Doc. 17, at 18-20. The ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work" and determine "whether the claimant has the ability to meet the job demands . . . despite the mental and/or physical limitations found" in the RFC. *Winfrey*, 92 F.3d at 1023-24 (10th Cir. 1996). It is Plaintiff's burden to prove she cannot perform her past relevant work. *See Turner v. Comm'r, SSA*, No. 21-4060, 2022 WL 454171, at *3 (10th Cir. Feb. 15, 2022) ("'The claimant bears the burden of proving his or her inability to perform past relevant work.'") (quoting *Andrade v. Sec'y of Health & Hum. Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993)).

At the hearing, the ALJ inquired into Plaintiff's past relevant work and the demands of those jobs. AR 42-47. The ALJ also asked the VE to classify Plaintiff's past relevant work. *Id.* at 57. The VE identified the exertion level—both as Plaintiff actually performed it and as generally performed—the SVP, and skill level of each job. *Id.* at 57-58. The VE testified that the administrative assistant position was "available as actually and generally performed" noting that the ALJ's restrictions posed in his hypothetical made the position "basically a sedentary RFC." *Id.* at 58. And when the ALJ followed up and

asked if he included the need to change positions at least every thirty minutes while remaining at the work station, the VE testified that this would not eliminate the administrative assistant position. The ALJ then found—based on the VE's testimony—Plaintiff could perform her past relevant work as bartender, administrative assistant, and cashier. *Id.* at 25-26.

First, the Court notes the VE testified administrative assistant was the only past relevant work a hypothetical individual with Plaintiff's RFC could perform. *Id.* at 58. Thus, the ALJ's finding about Plaintiff's ability to perform her past work as an assistant manager, bartender, and cashier is unsupported. *Id.* at 26. The Commissioner concedes the ALJ erred in this regard, but contends the error is harmless because Plaintiff could still return to her past work as an administrative assistant. Doc. 21, at 9-10, n.4; *see also Carl v. Colvin*, 2015 WL 428990, at *6 (D. Colo. Jan. 29, 2015) ("[S]o long as [the claimant] can continue to perform at least one job, she will be found to be not disabled."). Plaintiff contends the error is not harmless because "the ALJ failed his own findings regarding the demands of such work and instead permitted the analysis to take place solely in the VE's head." Doc. 17, at 19. She asserts the ALJ's "conclusory statement did not contain any actual findings regarding

the specific demands (or elaboration of the requirements) of said position."[6] *Id.*
at 20.

As to the administrative assistant position, the undersigned finds the
ALJ properly analyzed the demands of Plaintiff's past relevant work. "The ALJ
may rely on information supplied by the VE at step four," but "the ALJ himself
must make the required findings on the record." *Winfrey*, 92 F.3d at 1025.
Here, the ALJ listed Plaintiff's past relevant work along with the exertion
requirements and stated:

> Assuming [Plaintiff's RFC] as assessed by the undersigned here,
> the [VE] testified that [Plaintiff] would be able to perform the
> requirements of an . . . administrative assistant . . . per her
> description of the jobs and the D.O.T descriptions. Therefore, in
> comparing [Plaintiff's RFC] with the physical and mental demands
> of the work as a[n] . . . administrative assistant . . . the undersigned
> finds that [Plaintiff] is able to perform this work as actually and
> generally performed per the [VE's] testimony.

---

[6]     Plaintiff also contended the ALJ should have made findings about her
past relevant work "with respect [to] the amount of cervical mobility and
continuous sitting and standing it required despite such limitations being
warranted by the evidence." Doc. 17, at 20. But the ALJ did not err by failing
to include limitations related to those conditions in the RFC. *See supra* § III.A.
Thus, any error would be harmless because any limitations in Plaintiff's past
relevant work superfluous to the RFC would not factor in the phase three
analysis. *See Winfrey*, 92 F.3d at 1023 (10th Cir. 1996) (noting phase three
requires the ALJ to determine "whether the claimant has the ability to meet
the job demands found in phase two despite the mental and/or physical
limitations found in phase one").

AR 25-26. "While the ALJ did not use the phrase 'I find' in connection with his conclusion in the second phase of the analysis, the form of the words should not obscure the substance of what the ALJ actually did." *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) (where the ALJ "quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis"). And unlike the ALJ's findings here, the ALJs in the cases cited by Plaintiff included no relevant discussion about the demands of her past relevant work, and the Court does not find them persuasive. *See Farrill v. Astrue*, 486 F. App'x 711, 713 (10th Cir. 2012) ("Our review of the record does not reveal any evidence regarding the mental demands of Ms. Farrill's past relevant work."); *Guevara v. Colvin*, 2015 WL 711704, at *3 (N.D. Okla. Feb. 18, 2015) ("The ALJ provided no elaboration on the exact requirements of Plaintiff's jobs. At step four it is necessary to inquire and make findings as to the specific demands of the claimant's particular jobs that have a bearing on the medically established limitations."); *Wilson v. Astrue*, No. CIV-09-520-HE, 2010 WL 1372598, at *4 (W.D. Okla. Mar. 2, 2010) ("The ALJ did not include in the decision any specific findings concerning the physical and mental demands of Plaintiff's previous jobs."), *adopted*, 2010 WL 1372563 (W.D. Okla. Mar. 31, 2010). Thus, the ALJ did not err in his analysis.

IV.    **Conclusion.**

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 26th day of July, 2022.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE